**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEFENDERS OF WILDLIFE, SIERRA CLUB, THE WILDERNESS SOCIETY, and VERMONT NATURAL RESOURCES COUNCIL,<br><br>Plaintiffs,<br><br>v.<br><br>MIKE JOHANNS, Secretary, United States Department of Agriculture, in his official capacity; DALE BOSWORTH, Chief, United States Forest Service, in his official capacity; and UNITED STATES FOREST SERVICE,<br><br>Defendants,<br><br>AMERICAN FOREST & PAPER ASS'N and AMERICAN FOREST RESOURCE COUNCIL,<br><br>Defendants-Intervenors.<br>_____/ | No. C 04-4512 PJH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR JUDGMENT ON THE PLEADINGS** |

   This is an environmental case in which plaintiffs mount numerous facial challenges to a 2004 National Forest Management Act ("NFMA") interpretative rule (the "2004 Interpretative Rule") and to 2005 NFMA Planning Regulations. Defendants move for partial summary judgment and/or judgment on the pleadings. Having read the parties' papers and carefully considered their arguments and the relevant legal authorities, the court hereby GRANTS the motion in part and DENIES it in part as follows.

## INTRODUCTION

Plaintiffs are non-profit environmental and conservation organizations headquartered throughout the United States. Plaintiffs assert five claims for relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, the NFMA, 16 U.S.C. § 1600 et seq., and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4231 et seq., as follows:

(1) Claim One: Violation of APA – Failure to Provide Notice and Comment on the 2004 Interpretative Rule;

(2) Claim Two: Violation of NFMA and APA – Failure to Include Required Resource Standards in the 2005 Planning Regulations;

(3) Claim Three: Violation of APA – Inadequate Notice and Comment on 2005 Planning Regulations;

(4) Claim Four: Violation of APA – Failure to Provide Support in Record for Abandonment of Species Viability Requirement in 2005 Planning Regulations;

(5) Claim Five: Violation of NEPA and APA – Failure to Prepare Environmental Impact Statement ("EIS") on 2005 Planning Regulations.

Defendants move for partial summary judgment and/or judgment on the pleadings with respect to claims one, two, and four.

## BACKGROUND

**A.   The National Forest System and the NFMA**

The National Forest System, which at 192 million acres comprises approximately eight percent of the United States landscape, includes 155 national forests and 22 national grasslands. *See Ohio Forestry Assoc., Inc. v. Sierra Club*, 523 U.S. 726, 729 (1998). The National Forest System is administered by the Forest Service, an agency of the U.S. Department of Agriculture ("USDA").

In 1976, Congress enacted the National Forest Management Act of 1976 ("NFMA") to reform Forest Service management of the National Forest System. The NFMA requires the Secretary of Agriculture to develop land and resource management plans for units of the National Forest System. 16 U.S.C. § 1604(a). When the Secretary develops these plans, the NFMA requires him to comply with NEPA, which in turn encompasses a duty to prepare environmental impact statements ("EIS"). *See* 16 U.S.C. § 1604(g)(1).

The NFMA envisions a two-stage approach to forest planning. *Inland Empire Public Lands Council v. United States Forest Service*, 88 F.3d 754, 757 (9th Cir. 1996) (citing *Idaho Conservation League v. Mumma*, 956 F.2d 1508 1511 (9th Cir. 1992)); *Neighbors of Cuddy Mountain v. United States Forest Service*, 137 F.3d 1372, 1376 (9th Cir. 1998). First, the NFMA requires the Forest Service to develop a comprehensive forest plan ("forest plan"), which may also be referred to as a Land Resource Management Plan ("LRMP"), and as mentioned above, an EIS for the entire forest. *Id;* 36 C.F.R. § 219(a),(b). The forest plan establishes basic guidelines and sets forth the planning elements that will be employed by the Forest Service in future actions in that forest. *See Sierra Club v. Robertson*, 28 F.3d 753, 755 (8th Cir. 1994). "Once the [Forest Plan] is approved, direct implementation of the LRMP occurs at a second stage, when individual site-specific projects are proposed and assessed." *Inland Empire*, 88 F.3d at 757. A site-specific project or decision "must be consistent with the LRMP for the larger area." *Neighbors*, 137 F.3d at 1376-77.

The NFMA also imposes substantive requirements on the Forest Service at both stages. *See* 16 U.S.C. § 1604(g)(3). These requirements have been promulgated as regulations. *See* 36 C.F.R. §§ 219 et seq. Among the NFMA's substantive requirements is the duty to provide for the diversity of plant and animal communities. *See* 16 U.S.C. § 1604(g)(3)(B).

**B.    The 1982 Planning Regulations**

In 1982, the Forest Service promulgated regulations to protect wildlife and fish, soils, water, outdoor recreation, and other public resources. The 1982 Planning Regulations included a species viability provision, which provided that "[f]ish and wildlife habitat shall be managed to maintain viable populations of existing native and desired non-native vertebrate species in the planning area." *See* 36 C.F.R. § 219.19(a)(1) & (6) (1982). To implement or facilitate this provision, the 1982 Planning Regulations required the Forest Service to select certain wildlife species to be monitored as proxies for the health of broader wildlife populations of the specific ecosystems. These proxy species are referred to as "management indicator species" or "MIS." *Id.* at § 219.19(a)(1).

#### C. **The 2000 Planning Regulations**

Several attempts were made to revise the 1982 Planning Regulations prior to 2000. In 1998, a Committee of Scientists convened meetings across the country regarding such revisions, and invited public participation. In 1999, the Committee provided recommendations to the Forest Service. Subsequently, on November 9, 2000, the Forest Service adopted a final rule revising provisions for managing wildlife and other resources in the national forests. The 2000 Planning Regulations consisted of a transition provision for the new regulations, and substantive regulations that included revisions to the wildlife "viability" provision of the 1982 Planning Regulations. 65 Fed. Reg. 67579; 36 C.F.R. § 219.35 (2000).

The 2000 Planning Regulations' transition provision, 36 C.F.R. § 219.35, provided that the 1982 Planning Regulations would remain in effect until the 2000 Planning Regulations became effective. Furthermore, the 1982 Planning Regulations were to continue to govern site-specific Forest Service decisions until November 9, 2003. *Id.*

In 2001, the USDA determined that the Forest Service was not sufficiently prepared to implement the 2000 Planning Regulations, proposed a new rulemaking, and postponed the effective date of the 2000 Planning Regulations until May 2002. *See* 66 Fed. Reg. 27552 (May 17, 2001). Subsequently, on May 20, 2002, the USDA again extended the transition date of the 2000 Planning Regulations, and published an "interim final rule" that provided that until revised planning regulations were promulgated, Forest Service officials could continue to amend or revise forest plans pursuant to the 1982 Planning Regulations if they chose to do so, instead of the 2000 Planning Regulations. 67 Fed. Reg. 35431-34.

#### D. **The 2002 Proposed Regulations**

On December 6, 2002, the Forest Service published the 2002 Proposed Regulations, which differed from the 2000 Planning Regulations. Public comment on the 2002 Proposed Regulations was open until April 7, 2003.

Meanwhile, on September 10, 2003, the Forest Service published another "interim final rule," again extending the transition date of the 2000 Planning Regulations. 68 Fed. Reg. 53294 (Sept. 10, 2003). This interim rule provided that, for site-specific decisions, the

4

effective date of the 2000 Planning Regulations was "extended from November 9, 2003, *until the Department promulgates the final planning regulations published as proposed December 6, 2002*." 68 Fed. Reg. 53297 (emphasis added).

**E.     The 2004 Interpretative Rule**

While the USDA was still in the process of reviewing the 2002 Proposed Regulations, the department asserted that "considerable uncertainty" had arisen regarding the effect of the 2000 Planning Regulations and its provision regarding application of the 1982 Planning Regulations during the 2000 Planning Regulations' transition period.  On September 29, 2004, the Forest Service issued an "interpretative rule" that provided that the 1982 Planning Regulations were no longer in effect.  69 Fed. Reg. 58057.  The 2004 Interpretative Rule provided in pertinent part:

> The transition provisions as originally enacted, and now twice amended, explicitly refer to the 1982 planning rule as the rule "in effect prior to November 9, 2000."  At the same time, given the extension of the effective date of paragraph (d), within which site-specific decisions must comply with the 2000 planning rule (68 FR 53294), it is clear that site-specific decisions entered into during the transition period are not to comply with the substantive provisions of the 2000 planning rule.  This interpretative rule clarifies that until a new final rule is promulgated, the transition provision of the 2000 planning rule, as amended by the May 2002 interim final rule remain in effect, including the requirement of § 219.35 paragraph (a) of the transition provisions that responsible officials consider the best available science in implementing national forest land management plans and, as appropriate, plan amendments.  Pursuant to paragraph (b), the provisions of the 1982 planning rule may continue to be used only for plan amendments and revisions upon election of the responsible official.  Appropriate plan amendments and projects proposed during the transition period should be developed considering the best available science in accordance with § 219.35 paragraph (a).

69 Fed. Reg. at 58056.

On October 26, 2004, shortly after publication of the 2004 Interpretative Rule, plaintiffs filed this lawsuit.

**F.     The 2005 Planning Regulations**

Subsequently, on January 5, 2005, the Forest Service published the final 2005 Planning Regulations.  70 Fed. Reg. 1022.  Plaintiffs in this case filed a supplemental complaint on February 17, 2005, adding a challenge to the 2005 Planning Regulations in

5

addition to the 2004 Interpretative Rule.  The pertinent portions of the 2005 Planning Regulations are discussed in more detail as follows in this order.

## DISCUSSION

**A.    Legal Standards**

**1.    Motions for Summary Judgment**

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or that is "not significantly probative."  *Id.* at 249-50.  The court may not weigh the evidence, and is required to view the evidence in the light most favorable to the nonmoving party.  *Id.* at 248.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  *Id.*  If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion.  *Anderson*, 477 U.S. at 250.

**2.    Motions for Judgment on the Pleadings**

The standard applied on a Rule 12(c) motion for judgment on the pleadings is the same as that applied to Rule 12(b)(6) motions: judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is

6

entitled to judgment as a matter of law. *See Hal Roach Studios, Inc. v. Richard Feiner & Co*, 896 F.2d 1542, 155 (9th Cir. 1989). As with motions to dismiss under Rule 12(b), a motion for judgment on the pleadings ordinarily may not be based on matters outside the pleadings. However, if extrinsic evidence is presented and the court is willing to consider it, then the motion is "converted" to one for summary judgment. *See id.* at 1550.

### 3. Actions under the Administrative Procedure Act

The general review provisions of the APA, 5 U.S.C. §§ 701, et seq., apply in cases asserting violations of the NFMA and NEPA. *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 891 (9th Cir. 2002); *Hells Canyon Alliance v. U. S. Forest Serv.*, 227 F.3d 1170, 1176-77 (9th Cir. 2000). In fact, "[t]here is no right to seek judicial review under the Administrative Procedure Act in the absence of a relevant statute whose violation forms the legal basis of the complaint against the governmental action." Wright & Miller, 14A Fed. Prac. & Proc. Juris.3d § 3659. Arbitrary and capricious review cannot be conducted under the APA independent of another statute. *Oregon Natural Resources Council v. Thomas*, 92 F.3d 792, 797 (9th Cir. 1996).

Under the APA, "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a particular statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Agency action includes the "whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The APA applies except to the extent that a statute precludes judicial review, or agency action is committed to agency discretion by law. 5 U.S.C. § 701(a).

An agency action may be set aside under the APA only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A)); *see Morongo Band of Mission Indians v. Fed. Aviation Admin*, 161 F.3d 569, 573 (9th Cir. 1998). The APA limits judicial review to review of "final" agency action. *See* 5 U.S.C. § 704. For an action to be "final" under the APA, it should mark the conclusion of an agency's decision-making process, and should also be an action by which rights or obligations have been determined or from which legal conclusions flow. *Bennett v. Spear*, 520 U.S. 154, 177

(1997).

### 4. Actions Under NFMA

Because the NFMA does not authorize judicial review or create a private cause of action to enforce its provisions, plaintiffs are required to bring a claim under the APA to enforce NFMA provisions. *Neighbors of Cuddy Mtn. v. Alexander*, 303 F.3d 1059, 1067 (9th Cir. 2002); *Ecology Center v. United States Forest Service*, 192 F.3d 922, 924-25 (9th Cir. 1999).

**B.   Analysis**

### 1.   *Claim One: Violation of APA/Failure to Provide Notice and Comment on 2004 Interpretative Rule*

Plaintiffs contend that with the 2004 Interpretative Rule, defendants sought to rescind the 1982 Planning Regulations as the governing authority in effect for site-specific Forest Service decisions. Plaintiffs argue that the 2004 Interpretative Rule was really legislative, and that defendants sought to avoid the APA requirements for notice and comment by labeling the regulatory change an "interpretative rule."

In support, plaintiffs note that the 2004 Interpretative Rule replaced detailed 1982 Planning Regulations, requiring consideration of species viability, with a generalized requirement that the Forest Service merely "consider" "the best available science" in making site-specific decisions. In this respect, plaintiffs assert that the 2004 Interpretative Rule was inconsistent with the 1982 Planning Regulations as well as the 2000 Planning Regulations.

Accordingly, plaintiffs claim that defendants failed to provide public notice and permit comment on the 2004 Interpretative Rule as required by the APA, 5 U.S.C. § 553. They argue that the rulemaking was arbitrary, capricious, and an abuse of discretion under the APA, § 706(2).

Defendants do not dispute that the 2004 Interpretative Rule was promulgated without public comment or involvement. Instead, they argue that the 2004 Interpretative Rule was not legislative, and therefore no notice or public comment period was required under the APA. According to defendants, the 2004 Interpretative Rule merely "explained" that the site-specific

8

provisions of the 1982 Planning Regulations, such as the species viability provision, were no longer in effect, but had been supplanted under the 2000 Planning Regulations' transition provision, which dictated that site-specific activities were to be guided by the "best available" science principle. Defendants argue that the 2004 Interpretative Rule merely "stated USDA's understanding of the transition provision of the 2000 . . . regulations and did not itself change the degree to which the 1982 . . . regulations remained in effect."

In the instant motion, defendants, however, have not developed this argument on the merits or cited any authority warranting summary judgment on the merits. Instead, defendants contend that plaintiffs' first claim is moot and that plaintiffs lack standing to assert it.

### A.     Mootness

A federal court's jurisdiction is limited to cases or controversies. A case becomes moot when it "loses its character as a present, live controversy of the kind that must exist if [the court is] to avoid advisory opinions. . . ." *Neighbors of Cuddy Mountain*, 303 F.3d at 1065. The Ninth Circuit has made it "clear that completion of an activity is not the hallmark of mootness." *Id.* "Rather, a case is moot only where no effective relief for the alleged violation can be given." *Id.*

Additionally, a challenge is not barred as moot "if the action at issue is capable of repetition, yet likely to evade review." *Idaho Dep't of Fish & Game v. Hardy*, 56 F.3d 1071, 1075-75 (9th Cir. 1995). "[A]gency actions fall within the capable of repetition exception to the mootness doctrine if (1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." *Id.* at 1075.

Defendants assert that following publication of the 2005 Planning Regulations, the 2004 Interpretative Rule, and the 2000 Planning Regulations that it interpreted, were no longer effective.[1] Defendants note that the 2005 Planning Regulations expressly repealed the 2000

---

[1] Defendants contend that as an interpretation of the transition provision of the 2000 Planning Regulations, the 2004 Interpretative Rule necessarily was in effect only for the period that the 2000 Planning Regulations were in effect.

9

Planning Regulations, and the related 2004 Interpretative Rule, through a notice published the day that the 2005 Planning Regulations became effective. *See* 70 Fed Reg. 1022 (Jan 5, 2005). Therefore, defendants argue that plaintiffs' first claim is moot because there is no live case or controversy. Moreover, because the 2004 Interpretative Rule is no longer in effect, defendants contend that the only possible outcome of this litigation would be an impermissible advisory opinion.

Plaintiffs argue, however, that the 2004 Interpretative Rule does have continuing effect for a number of reasons, including that federal courts have continued to apply the 2004 Interpretative Rule to forest projects that arose during the 2000 Planning Regulations' transition period, which ultimately lasted from November 2000 through January 2005, notwithstanding repeal of 2000 provision.

In response, defendants contend that because plaintiffs have not challenged the application of the 2004 Interpretative Rule to site-specific project decisions, there is no live case or controversy. Moreover, defendants argue that the 2004 Interpretative Rule does not present a live controversy because the 2005 Planning Regulations should apply retroactively.

Normally, "an attack on an interim or temporary administrative rule is mooted when a permanent rule supersedes the temporary rule." Wright & Miller, 13A Fed. Prac. & Proc. Juris.2d § 3533.6; *see also Pacific Northwest Venison Producers v. Smitch*, 20 F.3d 1008, 1011 (9th Cir. 1994) (challenge to emergency regulations governing possession of exotic wildlife was mooted to the extent that the regulations were replaced by permanent regulations that did not apply to one of the species covered by the permanent regulations on essentially the same terms as the temporary regulations). However, a challenge to a repealed rule or regulation may not be moot if "the former provisions continue to control the consequences of past actions." Wright & Miller, 13A Fed. Prac. & Proc. Juris.2d at § 3533.6; *see also Jacobus v. Alaska*, 338 F.3d 1095, 1102-04 (9th Cir. 2003) (subsequently amended provision of Alaskan campaign finance laws was not moot where legally significant present effects remained). "[I]n cases involving the amendment or repeal of a statute, mootness is not a jurisdictional issue; rather, [the court] may continue to exercise authority over a purportedly

10

moot case where the balance of interests favors such continued authority." *Id.* at 1103. "The party moving for dismissal on mootness grounds bears a heavy burden." *Id.*

Defendants' argument that the 2005 Planning Regulations should be retroactively applied is not persuasive on the mootness issue. The Ninth Circuit recently held that it would apply NFMA planning regulations in effect at the time "the plan revisions challenged in the lawsuit were prepared." *Natural Resources Defense Council v. U.S. Forest Service*, 421 F.3d 797, 800 n.3 (9th Cir. 2005). In that case, the court held that the plaintiffs' challenge to 1997 amendments to the forest plan at issue should be judged pursuant to the planning regulations in effect at the time the plan revisions were made – the 1982 Planning Regulations. *Id.* Therefore, pursuant to *Natural Resources,* the 2004 Interpretative Rule may continue to be applied in cases where the challenged action was taken during the 2004 Interpretative Rule's effective period – and it clearly has been. *See, e.g., Utah Environmental Congress v. Bosworth*, 370 F.Supp.2d 1157, 1169 (D. Utah 2005); *Forest Watch v. U.S. Forest Service*, 410 F.3d 115, 117 (2nd Cir. 2005); *League of Wilderness Defenders v. Bosworth*, 383 F.Supp.2d 1285, 1303 & n.5 (D.Or. 2005); *but see Utah Environmental Congress v. Bosworth*, 421 F.3d 1105, 1110-1111 (10th Cir. 2005) (refusing to apply 2004 Interpretative Rule).

For these reasons, the court concludes that claim one is not moot.[2]

### B. Standing

To satisfy Article III standing, plaintiffs must demonstrate that:

> (1) [they] ha[ve] suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

---

[2] Many of defendants' arguments regarding mootness more appropriately concern the plaintiffs' standing, including defendants' argument that plaintiffs here assert only a facial challenge to the 2004 Interpretative Rule, and unlike the cases that apply the rule, do not challenge a site-specific project enacted during the 2004 Interpretative Rule's effective period. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 190 (2000) ( "[T]here are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness.").

11

*City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004); *Citizens for Better Forestry v. U.S.D.A.,* 341 F.3d 961, 975 (9th Cir. 2003).

Defendants contend that plaintiffs lack standing because they are unable to demonstrate a concrete, imminent injury that is redressable by a favorable decision. Defendants further argue that plaintiffs are not suffering a present or prospective injury because the 2004 Interpretative Rule that they challenge is no longer in effect, having been supplanted by the new 2005 Planning Regulations. Because the 2004 Interpretative Rule has been rescinded, defendants contend that plaintiffs can no longer claim that they are injured by the USDA having promulgated the rule in alleged violation of APA procedures. Defendants further note that because plaintiffs are raising only a facial challenge to the 2004 Interpretative Rule – as opposed to a site-specific challenge – there is no threatened future injury resulting from any potential application of the rule to a prior project.

In their opposition, plaintiffs appear to concede that they are not currently challenging a site-specific project. Instead, plaintiffs assert a procedural and/or an informational injury based on the 2004 Interpretative Rule's failure to provide for notice and public comment and the resulting removal of 1982 regulation requirements. They rely on the Ninth Circuit's decision in *Citizens for Better Forestry* ("*Citizens*")*,* for the proposition that "environmental plaintiffs have standing to challenge not only site-specific plans, but also higher-level, programmatic rules that impose or remove requirements on site-specific plans." 341 F.3d at 975.

The standing requirements for procedural injuries vary from the test set forth above. To demonstrate a cognizable procedural injury in fact, plaintiffs are required to show: "(1) the agency violated certain procedural rules; (2) these rules protect plaintiff's concrete interests; and (3) it is reasonably probable that the challenged action will threaten [plaintiff's] concrete interests." *City of Sausalito*, 386 F.3d at 1197 (citing *Citizens*, 341 F.3d at 969-70). In other words, "for Article III purposes, [the court] may recognize a 'procedural injury' when a procedural requirement has not been met, so long as the plaintiff also asserts a 'concrete interest' that is threatened by the failure to comply with that requirement." *Id.*

12

### I. Procedural Injury in Fact

"To satisfy the injury in fact requirement, a plaintiff asserting a procedural injury must show that 'the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing.'" *Cantrell v. City of Long Beach*, 241 F.3d 674, 679 (9th Cir. 2001) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 573 n. 8, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). As plaintiffs have recognized, Ninth Circuit law is clear "that environmental plaintiffs have standing to challenge not only site-specific plans, but also higher-level programmatic rules that impose or remove requirements on site-specific plans." *Citizens*, 341 F.3d at 975.

In *Citizens*, the plaintiffs filed a lawsuit on February 16, 2001, challenging the substance of and alleged procedural violations related to the promulgation of the 2000 Planning Regulations. 341 F.3d at 968. The challenge was a facial challenge to the regulations, and not a site or project-specific challenge. Soon after the plaintiffs filed the lawsuit, the USDA announced that it was developing a new rule to replace the 2000 Planning Regulations. *Id.* Plaintiffs and the USDA stipulated to stay the portion of the lawsuit challenging the merits of the 2000 Planning Regulations pending the regulations' revision, but plaintiffs did not agree to stay the procedural challenge to the 2000 Planning Regulations. *Id.* Plaintiffs then moved for partial summary judgment on their procedural claims, and the USDA filed a cross-motion contending that plaintiffs lacked standing to challenge the 2000 Planning Regulations. The district court granted the USDA's motion.

On appeal, the Ninth Circuit reversed. The court held that "standing may properly hinge on [the] type of injury" asserted by the plaintiffs in that case – the denial of the public's opportunity to comment and participate in the revision of an environmental regulation. *Id.* at 971. Specifically, the court noted that:

> [T]his type of procedural injury is tied to a substantive harm to the environment - the harm that takes place when governmental decisionmakers make up their minds without having before them an analysis (with public comment) of the likely effects of their decision on the environment.

*Id.* (citations omitted).

The *Citizens* court then reiterated that "the concrete interest test . . . requir[es] a geographic nexus between the individual asserting the claim and the location suffering an environmental impact." *Id.* "That is, environmental plaintiffs must allege that they will suffer harm by virtue of their geographic proximity to and use of areas that will be affected by the USDA's policy." *Id.* The court then held that the plaintiffs in that case had done so where they had "supported with numerous affidavits . . . that their members use and enjoy national forests." *Id.* The court rejected the USDA's argument that the plaintiffs were required to assert that a "specific injury will occur in [a] specific national forest." *Id.* Instead, the court held that "[t]he asserted injury is that environmental consequences might be overlooked as a result of deficiencies in the government's analysis under environmental statutes." *Id.*

The procedural injury that plaintiffs here have alleged is similar to that of the plaintiffs in *Citizens*. At the outset, the plaintiffs here have properly alleged, and supported with numerous affidavits, a concrete interest – that their members use and enjoy national forests.

Moreover, similar to the plaintiffs in *Citizens*, the plaintiffs here have also properly alleged a procedural injury in the denial of the opportunity to comment on the 2004 Interpretative Rule. In this case, plaintiffs have sufficiently alleged that the purported procedural violations of the APA harmed plaintiffs' concrete interest in their rights under the Planning Regulations implementing the NFMA, specifically the species viability standards, which plaintiffs assert were altered by the 2004 Interpretative Rule. For the reasons stated by the Ninth Circuit in *Citizens*, the court rejects defendants' argument that plaintiffs need to demonstrate an injury to a site-specific project.

### ii.     Causation and Redressability

Once a plaintiff has established a procedural injury in fact, the causation and redressability requirements are relaxed. *Citizens*, 341 F.3d at 975; *see also Defenders of Wildlife v. United States Environmental Protection Agency*, 420 F.3d 946, 957-58 (9th Cir. 2005) ("[r]eliance on procedural harms alters a plaintiff's burden on the last two prongs of the Article III standing test"). Unlike in an ordinary causation analysis, a petitioner asserting a procedural injury need only establish "the reasonable probability of the challenged action's

14

threat to [his] concrete interest."  *Hall v. Norton*, 266 F.3d 969, 977 (9th Cir. 2001).

The issue here is whether the fact that the 2004 Interpretative Rule was rescinded by the 2005 Planning Regulations dispels any "reasonable probability" of its "threat to [plaintiffs'] concrete interest" in the viability standards that the 2004 Interpretative Rule allegedly replaced.  This is very similar to the mootness issue discussed above.

Defendants argue that this case is different than *Citizens,* 341 F.3d at 975, because the plaintiffs in that case were challenging the promulgation of the 2000 Planning Regulations while those regulations still retained prospective application.  Defendants argue that unlike the plaintiffs in *Citizens*, there is no reasonable possibility that the plaintiffs here may be prospectively harmed by application of the 2000 Planning Regulations via the 2004 Interpretative Rule because the 2005 Planning Regulations rescinded the 2004 Interpretative Rule.  For that reason, defendants argue that this court will be unable to redress any injury to plaintiffs by granting the declaratory and injunctive relief plaintiffs seek.

However, as discussed above in conjunction with the discussion on mootness, the 2004 Interpretative Rule still remains a prospective if not a current threat to plaintiffs' concrete interests because it continues to be applied by federal courts to projects underway at the time the rule was in effect.  Moreover, contrary to defendants' argument, the 2000 Planning Regulations at issue in *Citizens* retained no more "prospective application" than the 2004 Interpretative Rule at issue here.  In *Citizens*, the 2000 Planning Regulations were being replaced.

Nor are defendants' arguments regarding redressability relevant here.  As noted, where plaintiffs have alleged a procedural injury, the redressability requirement is relaxed. *See Cantrell*, 241 F.3d at 674.  "The Supreme Court has recognized that the assertion of procedural rights is special."  *Id.*  "The person who has been accorded a procedural right to protect his concrete interest can assert that right without meeting all the normal standards for redressability and immediacy."  *Id.* (citing *Defenders of Wildlife*, 504 U.S. at 572 n.7).  In the most recent Ninth Circuit case mentioned above, *Defenders of Wildlife*, the court did not address either the causation or redressability standards, suggesting that neither was an issue

15

where a procedural harm had been alleged. 420 F.3d at 957-58.

For these reasons, the court finds that plaintiffs have standing to assert claim one. Defendants' motion for partial summary judgment and/or judgment on the pleadings is therefore DENIED as to claim one.

### 2. Claims Two and Four

#### A. Description of Plaintiffs' Claims

In claim two, plaintiffs contend that the 2005 Planning Regulations differ substantially from the 2002 Proposed Regulations, for which public comment was sought, and that it was promulgated without observance of the procedure required by law, in violation of APA § 706(2), and is, therefore, arbitrary, capricious, and an abuse of discretion.

Plaintiffs further contend that the 2005 Planning Regulations violate the NFMA by failing to include the mandatory standards set forth in 16 U.S.C. § 1604(g). Specifically, plaintiffs contend that defendants deleted from the 2005 Planning Regulations virtually every resource standard that appeared in the 2002 Proposed Regulations. The omitted standards include:

- Standards to Provide for the Diversity of Plant and Animal Communities
- Standards Re: Timber Harvest
- Clear-cutting Standards
- Forest Plan Consistency Requirement
- Public Participation Requirement

Pre- 2005 Planning Regulations provided detailed guidance to the Forest Service for implementing and monitoring species viability. *See* 36 C.F.R. § 219.19 (1982 Planning Regulations); 36 C.F.R. § 219.20 (b)(2) (2000 Planning Regulations). In claim four, plaintiffs contend that the 2005 Planning Regulations violate the APA because they abandon the previous species viability requirements contained in prior regulations in favor of an "ecosystem diversity" without a substantial basis in the record for doing so. *See* 36 C.F.R. § 219.10(b) (2005 Planning Regulations).

#### B. Nature of Claims Two and Four

16

The nature of plaintiffs' claims – substantive versus procedural – is relevant to plaintiffs' standing and the ripeness of claims two and four. Defendants contend that both claims two and four constitute substantive claims, asserting that plaintiffs allege substantive injuries – as opposed to procedural injuries. Plaintiffs, on the other hand, contend that both claims two and four are procedural claims. Intervenors, unlike defendants, have not challenged claim four on standing and ripeness grounds, and appear to concede that claim four is a procedural claim. However, like defendants, intervenors argue that claim two is a substantive claims.

### *i. Claim Two is a Substantive Claim*

Plaintiffs argue that claim two is a procedural claim, contending that the Forest Service did not follow NFMA procedures in promulgating the 2005 Planning Regulations. However, review of the plaintiffs' complaint clearly suggests the contrary. As set forth above, plaintiffs contend that the 2005 Planning Regulations unlawfully omitted or changed prior planning regulations interpreting the NFMA, and that in doing so, defendants violated the APA. Plaintiffs' argument is essentially that because some of the planning regulations changed by or omitted from the 2005 Planning Regulations themselves provided procedural directives, claim two should be read to assert a procedural injury. However, regardless how plaintiffs characterize it, claim two challenges the *substance* of the 2005 Planning Regulations – insofar as the 2005 Planning Regulations differ from prior Planning Regulations. *See, e.g., Inland Empire*, 88 F.3d at 759; *see also Neighbors of Cuddy Mtn.*, 303 F.3d at 1071 n.6; *Idaho Sporting Congress v. Rittenhouse*, 305 F.3d 957, 961 (9th Cir. 2002).

### *ii. Claim Four is a Procedural Claim*

The same cannot be said for claim four. Defendants argue that plaintiff's fourth "claim that the Forest Service's handling of the species diversity issue in the 2005 Planning Regulations is not supported by the record is nothing more than a substantive attack on the Planning Regulations asking the Court to review the Administrative Record to determine

17

whether the agency's substantive decisions satisfy section 1604(g)(3)(B)."[3]  Defendants' Reply Br. at 9.  The court finds, however, that defendants are incorrect regarding the nature of claim four.  Unlike claim two, claim four is not a disguised challenge to the 2005 Planning Regulations' standards regarding species viability, but is simply a procedural claim in which plaintiffs assert that the record defendants compiled in support of the 2005 Planning Regulations was insubstantial and therefore insufficient under the APA.  Accordingly, the court will construe claim four as alleging that procedural injury *only*.

### C. Ripeness: Claims Two and Four

In *Ohio Forestry Ass'n,* the Supreme Court announced a three-pronged test for determining the ripeness of an administrative challenge: (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented.  523 U.S. at 733.  However, since *Ohio Forestry,* the Ninth Circuit has interpreted the ripeness standards set forth by that case differently depending on whether plaintiffs present procedural or substantive claims.  *See Citizens*, 341 F.3d at 977; *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1090 (9th Cir. 2003) (citing *Kern v. BLM*, 284 F.3d 1062, 1070-71 (9th Cir. 2002)).

The Ninth Circuit "ha[s] recognized the distinction between *substantive challenges* which are not ripe *until site-specific plans are formulated*, and *procedural challenges* which are ripe for review" *at the time of violation*.  *Laub*, 342 F.3d at 1090 (emphasis added); *Kern*, 284 F.3d at 1070.  Accordingly, claim two, which presents a substantive facial challenge to the 2005 Planning Regulations is not ripe and therefore not justiciable.  *See id*.; *see also Ohio*

---

[3] Defendants are correct that arbitrary and capricious review cannot be conducted under the APA independent of another statute. *Oregon Natural Resources Council v. Thomas*, 92 F.3d 792, 797 (9th Cir.1996).  Plaintiffs in their opposition asserted that they were not claiming an NFMA violation.  Defendants construe this to imply that plaintiffs have not set forth another statute in conjunction with the APA violation that they allege in claim four, in violation of *Oregon Natural Resources Council*.  Defendants are off-track, though.  Plaintiffs merely suggest that they are not alleging a *substantive* NFMA violation.  In their complaint and elsewhere, they have clearly alleged that the "independent statute" in conjunction with their APA claim is 16 U.S.C. § 1604(g)(3)(B), concerning species viability.

*Forestry Ass'n*, 523 U.S. at 733. For this reason, defendants' motion for summary judgment and/or judgment on the pleadings is GRANTED as to claim two.

However, claim four, which mounts a procedural challenge is ripe. That is because the question regarding whether defendants compiled a sufficient record to revise the species viability standards in the 2005 Planning Regulations was ripe at the time the 2005 Planning Regulations were promulgated. Thus, claim four will not "inappropriately interfere with further administrative action," and there is no further factual development that can be had. *See Kern*, 284 F.3d at 1071.

### D.  Standing: Claim Four

Because claim two is not ripe, the only issue remaining is that of plaintiffs' standing with respect to claim four. The applicable legal standards are the same as those set forth above with respect to claim one since a procedural injury has been alleged. Therefore, the inquiry again is whether: "(1) the agency violated certain procedural rules; (2) these rules protect plaintiff's concrete interests; and (3) it is reasonably probable that the challenged action will threaten [plaintiff's] concrete interests." *City of Sausalito*, 386 F.3d at 1197.

The analysis and conclusion are nearly identical to that discussed above with respect to claim one and that contained in the Ninth Circuit's decision in *Citizens*. 341 F.3d at 969-76. Again, the plaintiffs here have properly alleged, and supported with numerous affidavits, a concrete interest – that their members use and enjoy national forests. Moreover, in claim four, the plaintiffs here have also properly alleged a procedural injury in the USDA's alleged failure to compile a sufficient record prior to amending and/or rescinding prior species viability standards. Plaintiffs have also demonstrated that the procedural injury presented a "reasonable probability" of its "threat to [plaintiffs'] concrete interest." *Hall*, 266 F.3d at 977.

For these reasons, the court concludes that plaintiffs have standing with respect to claim four. Defendants' motion for summary judgment and/or judgment on the pleadings is DENIED with respect to claim four.

### CONCLUSION

The court GRANTS IN PART and DENIES IN PART defendants' motion for partial

1  summary judgment and/or judgment on the pleadings.  As set forth above, the court DENIES
2  defendants' motion with respect to claim one because the claim is not moot, and plaintiffs
3  have standing to assert the claim.  The court also DENIES defendants' motion as to claim four
4  because the claim is ripe, and plaintiffs have standing.  However, the court GRANTS
5  defendants' motion regarding claim two because that claim, which constitutes a substantive
6  claim, is not ripe because plaintiffs are not challenging a site-specific project.

This order fully adjudicates the matter listed at no. 33 of the clerk's docket for this case.

**IT IS SO ORDERED.**

Dated: October 14, 2005

PHYLLIS J. HAMILTON
United States District Judge