**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEFENDERS OF WILDLIFE, SIERRA CLUB, THE WILDERNESS SOCIETY, and VERMONT NATURAL RESOURCES COUNCIL,<br><br>Plaintiffs,<br><br>v.<br><br>MIKE JOHANNS, Secretary, United States Department of Agriculture, in his official capacity; DALE BOSWORTH, Chief, United States Forest Service, in his official capacity; and UNITED STATES FOREST SERVICE,<br><br>Defendants,<br><br>AMERICAN FOREST & PAPER ASS'N and AMERICAN FOREST RESOURCE COUNCIL,<br><br>Defendants-Intervenors. | No. C 04-4512 PJH<br><br>**ORDER GRANTING STATE'S MOTION TO INTERVENE** |

## INTRODUCTION

This is an environmental case in which plaintiffs mount numerous challenges to a 2004 rule and 2005 regulations under the National Forest Management Act (NFMA), the Administrative Procedure Act (APA), and the National Environmental Policy Act (NEPA). Proposed plaintiff-intervenor, the State of California ex rel. Bill Lockyer, Attorney General ("the State"), moves for intervention as of right under Federal Rule of Civil Procedure 24(a), or alternatively for permissive intervention under Rule 24(b). Having read the parties' papers and carefully considered their arguments and the relevant legal authorities, the court hereby GRANTS the motion.

**PARTIES' POSITIONS**

In seeking intervention, the State hopes to protect the natural resources of California, including water quality and quantity, state navigable waters, wildlife, fish, and endangered or threatened species. The State has also asserted an interest in protecting the "specific natural resources and environmental values of State-owned property located within, adjacent to, and in the vicinity of national forests governed by the [2005 Rule]," as well as an interest in participating in changes in federal policy that might affect those resources.

The United States Forest Service, Mike Johanns, Secretary of the USDA, and Dale Bosworth, Chief of the United States Forest Service ("federal defendants") filed a statement of non-opposition to the State's motion, asserting that federal defendants take no position on the motion to intervene except if intervention is granted, it should be permissive intervention. Federal defendants contend that the State has not met all the elements for intervention as of right under Rule 24(a), but they do not challenge any factors specifically.

Defendants-intervenors, American Forest & Paper Association ("AFPA"), filed an opposition to the State's motion to intervene. As with federal defendants, AFPA contends that the State has not met all of the requirements for intervention as of right under Rule 24(a). Unlike federal defendants, however, AFPA also contests permissive intervention under Rule 24(b).

Finally, plaintiffs-Defenders have filed a statement of non-opposition to the State's motion to intervene.

**DISCUSSION**

**A.     Legal Standard**

Federal Rule of Civil Procedure 24 allows two types of intervention: intervention as of right, and permissive intervention. A non-party has a right to intervene where a federal statute confers such an unconditional right, or where the non-party's interest may be impaired by disposition of the pending action and the non-party is not adequately represented by the existing parties. Fed. R. Civ. P. 24(a). Rule 24(a)(2) states in relevant part:

2

> Upon timely application anyone shall be permitted to intervene in an action. . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In determining whether a potential party may intervene as of right, courts in the Ninth Circuit apply a four part test:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the current parties to the action.

*Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993); *Forest Conservation Council v. United States Forest Service,* 66 F.3d 1489,1493 (9th Cir. 1995). Rule 24 is construed liberally in favor of the proposed intervenor. *Sierra Club*, 995 F.2d at 1481.

The court also has discretion to permit intervention where it finds that the applicant's claims and those of the main action have a question of law or fact in common. Fed. R. Civ. P. 24(b)(2); *see also Garza v. County of Los Angeles*, 918 F.2d 763, 777 (9th Cir. 1990). Rule 24(b)(2) provides in relevant part:

> Upon timely application anyone may be permitted to intervene in an action. . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Under Rule 24(b)(2), a proposed intervenor must show that its application is timely and that it is has independent grounds for jurisdiction, but it need not demonstrate a "significantly protectable" interest relating to the property or transaction which is the subject of the action. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1008-09 (9th Cir. 2002). Once these conditions for intervention are met, whether to grant permissive intervention is within the sound discretion of the district court. Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* (2001) § 7:254.

**B.    Analysis**

3

### 1. Intervention as of Right

#### a. Timeliness

Whether a complaint is timely is subject to three considerations – "the stage of the proceeding, prejudice to other parties, and the reason for and length of the delay." *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). Timeliness is the threshold requirement for intervention as of right. *Id.* If a court determines that a motion to intervene is untimely, it need not consider any of the remaining elements of the four-prong test under Rule 24(a). *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). Courts must be more lenient when considering timeliness in relation to intervention as a matter of right than permissive intervention. *Oregon*, 745 F.2d at 552.

#### i. Stage of the Proceedings

With regard to the stage of the proceedings, the State argues that its motion to intervene is timely because the court has not made any substantive rulings on any of the claims which the State raises.[1] The State recognizes that plaintiffs filed a First Supplemental Complaint on February 17, 2005, and that this court has ruled on defendant's motion to dismiss three of the five causes of action in that complaint. However, the State contends that none of the claims it would bring concern the causes of action dismissed in the court's order, and that therefore, the court has not made any substantive rulings on the issues the State raises.

AFPA, on the other hand, disagrees that the proceedings are at an early stage. Citing to *League of United Latin American Citizens*, AFPA stresses that with regard to "stage of the proceedings," the relevant inquiry is not what has *not* been done, but what ground the court and parties have already covered. *See League*, 131 F.3d at 1303. AFPA notes that the plaintiffs have filed a First Supplemental Complaint, that federal defendants and AFPA have filed answers, that the administrative record has been filed, and that the court has ruled on

---

[1] The State brings a claim for failure to provide adequate notice and comment on the 2005 Final Rule in violation of the APA, and a claim for failure to analyze the environmental impacts of the 2005 Final Rule in violation of NEPA and the APA. These claims closely resemble Defenders' third and fifth claims as described in the First Supplemental Complaint.

4

federal defendants' motion for judgment on the pleadings.

In *League*, public interest groups and concerned citizens brought an action for declaratory and injunctive relief against state actors to prevent the implementation of a voter-backed initiative which denied social services, health care, and education benefits to illegal aliens (Proposition 187). *League*, 131 F.3d at 1300. The Ninth Circuit found that plaintiff's motion to intervene was untimely, but also noted that "a lot of water had already passed underneath Proposition 187's litigation bridge." *Id.* at 1303. Plaintiffs' complaints had been filed, the district court had issued a restraining order and preliminary injunction, defendants had appealed the preliminary injunction, four other parties had intervened, the court had certified a plaintiff class, defendants had filed and the court had granted a motion to dismiss, defendants had filed an answer and plaintiffs had filed a motion for summary judgment which the district court had granted in part and denied in part. Furthermore, discovery had been ongoing for roughly nine months. *Id.*

AFPA's comparison of this case to *League* is unconvincing. Here, plaintiffs have merely filed a First Supplemental complaint, and the court has dismissed one of the five actions in the complaint. Neither party has moved for summary judgment on the two claims the State seeks to raise, and there has been very little consideration of the merits of the case thus far. The case is clearly at an earlier stage in the proceedings than was the case in *League.*

In addition, while "delay can strongly weigh against intervention, the mere lapse of time, without more, is not necessarily a bar to intervention." *Oregon*, 745 F.2d at 552. The State here, like four other parties that successfully intervened in *League*, is moving for intervention approximately 8 months after plaintiffs filed their supplemental complaint. *See League* 131 F.3d at 1301.

Because timeliness is to be construed more broadly when the court is considering intervention as of right, this court concludes that the proceedings are still at a relatively early stage.

           **ii.**  **Prejudice to the Parties**

5

The second factor of the timeliness analysis is prejudice to the parties. *See Oregon*, 745 F.2d at 552. The State claims there would be no prejudice to any of the existing parties because there are no motions pending concerning any of the State's proposed causes of action, and because the State would be able to comply with the court's briefing schedule. AFPA responds by claiming prejudice would occur because AFPA would have to devote pages of its summary judgment brief to responding to the State's arguments – but do so within page limits established prior to the State's intervention. AFPA also states generally that both federal defendants and AFPA would be required to spend time and resources responding to the State's arguments.

In assessing prejudice to the parties, the court considers "whether existing parties may be prejudiced by the *delay in moving to intervene* . . . 'not whether the intervention itself will cause the nature, duration or disposition of the lawsuit to change' (otherwise, intervention would never be allowed because it inevitably prolongs the litigation)." Schwarzer, § 7:191. The court looks to factors such as loss of evidence, settlements made in expectation of no further claims, and the need to reopen matters previously resolved. *Id; see also Oregon*, 913 F.2d at 588-89 (finding that intervention would prejudice all parties because it would challenge a complex and delicately balanced plan achieved after four years of negotiation); *League*, 131 F.3d at 1304 (prejudice to all parties existed where proposed intervenor waited 27 months before seeking to intervene and petitioned the court for full party status when litigation was beginning to wind down).

AFPA's argument with respect to prejudice also fails. The only prejudice AFPA claims is additional time and expense to comply with briefing related to the State's intervention. Such issues concerning the nature and duration of the case are precisely the kind of issues that do not constitute prejudice.

### iii. Reason for and Length of Delay

Finally, with respect to the third timeliness factor, the State argues that the length of and reasons for its delay were inadvertent and were related in part to medical and maternity

6

absences in the Attorney General's office during the spring and summer of 2005. AFPA responds that the Attorney General has known about this litigation since at least February 2005, and contends these "excuses do not hold water" because the motion to intervene "did not require an exhaustive knowledge of the facts and legal issues of the case."

It is true that the Attorney General has been aware of the action since at least February 2005, and thus may have been on notice since then of the need to intervene. At the same time, the timeliness inquiry in which a court engages on a motion to intervene is to be determined from all of the circumstances. *See NAACP v. New York*, 413 U.S. 345, 366 (1973). The court may, in its discretion, decide whether the length of and reason for the delay, combined with the other timeliness factors, are reasonable. *See* Schwarzer, § 7:7.197.1 Furthermore, "[t]he mere passage of time, in itself, does not render an application untimely; rather, the important question concerns actual proceedings of substance on the merits." 6 *Moore's Federal Practice* § 24.21[1](2004); *see also Northwest Forest Resources Council*, 82 F.3d at 837 (finding motion timely where it had been filed "before the district court had made any substantive rulings."). On balance, given the early stage of the proceedings and the lack of prejudice to all parties, the court finds that the delay was not excessive.[2]

### b. Legally Protectable Interest

"Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established." *Greene v. United States,* 996 F.2d 973, 976 (9th Cir. 1993). However, an applicant for intervention must demonstrate a "significantly protectable interest." *Forest Conservation Council,* 66 F.3d at 1493. To do so under Rule 24(a), a proposed intervenor must: (1) establish an interest protectable under some law, and (2) show a relationship between the legally protected interest and the claims at issue. *Id.* at 1494; *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993).

---

[2]The court does not, however, find that the medical and maternity absences constitute sufficient excuses for any delay.

7

The State seeks to intervene by way of its independent constitutional, common law, and statutory authority to protect a number of interests that it claims satisfy the "protectable interest" test. The State argues that it has significant protectable interests in: (1) "the natural resources found on state lands located within, adjacent to, or otherwise affected by federal regulations governing national forests;" (2) "wildlife and natural resources within and in the vicinity of national forests held in the public trust by the State;" and (3) "State waterways." Furthermore, the State asserts an interest in protecting the right of the people of California to participate in administrative processes surrounding the changes in federal policy relating to forest management practices.

AFPA insists that the State does not satisfy the protectable interest test because the only interest the State asserts is a parens patriae[3] interest "in promoting and protecting natural resources 'held in the public trust for the People of the State.'"[4] Additionally, AFPA argues that the State does not have authority to bring this suit on behalf of the citizens of California under California Govt Code § 12607, and that the State asserts no independent authority for the action.

---

[3] A state may bring suit under a parens patriae theory where the state has a right to assert quasi-sovereign interests in its people, including both their physical and economic health and well-being. *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 602, 607 (1982).

[4] The Supreme Court and the Ninth Circuit have held that states do not have standing to bring parens patriae claims against the federal government. *Snapp*, 458 U.S. at 610 n. 16; *Nevada v. Burford*, 918 F.2d 854, 858 (9th Cir. 1990). However, neither the Supreme Court nor the Ninth Circuit has spoken definitively regarding whether the State is precluded from bringing a parens patriae action against the federal government because it lacks *standing* also means that it should not be allowed to *intervene* with such an action.

The majority of Circuits that have considered the problem have held that as long as the lead plaintiff has standing to litigate, prospective intervenors need not demonstrate standing. Juliet Johnson Karastelev, *On the Outside Seeking In: Must Intervenors Demonstrate Standing to Join a Lawsuit?*, 52 Duke L. J. 455, 465-66 (2002). The Ninth Circuit, however, has not explicitly decided the question. *Id.* at 466. In *Portland Audubon Soc'y v. Hodel,* the court declined to decide whether a party seeking to intervene must satisfy Article III standing, but did note that the "requirement that the applicant must 'assert [ ] an interest relating to the property or transaction which is the subject of the action,'" implicitly addresses standing. 866 F.2d 302, 308 n. 1 (9th Cir. 1989). In another case, however, the Ninth Circuit did not address the issue at all, and simply decided the intervenor's motion based on policy grounds including efficient resolution and broader access to the courts. *See United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002).

AFPA appears to be correct that the Attorney General may not file suit against the federal government under Cal. Govt. Code § 12607. *People of the State of California v. U.S. Forest Service,* 2005 WL 1630020, *5 (N.D. Cal. 2005). The statute authorizes the Attorney General to "maintain an action for equitable relief in the name of the people of the State of California against any person for the protection of the natural resources of the state from pollution, impairment, or destruction." Cal. Govt. Code § 12607. The federal government, however, is not included within the definition of "person" under the statute. *See* Cal. Govt. Code § 12604.

However, the Attorney General does retain authority under common law to sue the federal government to protect the State's interests. *Id.* at *6; *see also D'Amico v. Board of Medical Examiners*, 11 Cal. 3d 1, 14 (1974). In addition, the Attorney General may file suit under California Government Code §§ 12511 and 12512 which provide the Attorney General with authority over "all legal matters in which the State is interested" and which create a duty to "prosecute or defend all causes to which the State . . . is a party." Cal. Govt. Code §§ 12511, 12512. Moreover, as the State points out in its reply, persons entitled to sue under the APA include states, state agencies, and governments. *See Maryland Dept. of Human Resources v. Dept. of Health and Human Svcs.*, 763 F.2d 1441, 1445 n.1 (D.C. Cir. 1985). Therefore, the Attorney General has authority to bring this action under various state and federal statutes and under common law.

Furthermore, what AFPA fails to acknowledge in its opposition is that the State has independent proprietary and procedural interests in the subject matter of the litigation. If a state can show that it has interests independent of its citizens, it can also argue on behalf of the public interest without bringing a suit parens patriae. *City of Davis v. Coleman*, 521 F.2d 661, 672 n. 14 (9th Cir. 1975). Specifically, the State describes in its reply at least four interests that are *not* brought parens patriae: (1) the State's proprietary interest in protecting natural resources from harm; (2) the State's ownership of specific tracts of land in and adjacent to national forests; (3) the State's protectable procedural interest in the federal government's compliance with NEPA; and (4) the State's concrete injuries from the federal

9

government's non-compliance with NEPA and the APA.

Regarding its procedural interest and the State's injuries from the federal government's non-compliance with NEPA and the APA, the Ninth Circuit has determined that a procedural injury exists where "a plaintiff alleges that a proper EIS has not been prepared under the National Environmental Policy Act when the plaintiff also alleges a 'concrete' interest – such as an aesthetic or recreational interest – that is threatened by the proposed action." *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004). In this case, the State alleges concrete interests in protecting the State's natural resources and wildlife, as well as concrete interests based on its ownership of land in and adjacent to national forests. Because it alleges that these lands and resources will be harmed by the implementation of the 2004 Interpretive Rule and the 2005 Final Rule, the State demonstrates both that it has a protectable interest, and that the interest is related to the subject of the litigation.

Moreover, regarding the State's proprietary interest in protecting its natural resources from harm and the State's ownership of tracts of land in and adjacent to national forests, a host of cases support the proposition that the State of California has independent, relevant interests in the natural resources, wildlife and waters that the State seeks to protect with its motion to intervene. *People of the State of California v. United States Forest Service,* 2005 WL1630020, *3-4 (N.D. Cal.) (finding that California established standing to sue based on concrete interests in two state-owned forests threatened by Forest Service plan and noting plaintiff also could establish sufficient proprietary interest in the state's wildlife); *Forest Conservation Counsel*, 66 F.3d at 1488 (finding State and County asserted "concrete, significant, legally protectable, non-economic interests" in environmental health of state lands adjacent to national forests); *Douglas County v. Babbitt*, 48 F.3d 1495, 1497, 1501 (9th Cir. 1995) (holding that a County had proprietary interests in land adjacent to federal land).

The State asserts a number of independent interests that it does not bring on behalf of citizens. Because the Ninth Circuit has found repeatedly that such interests satisfy the protectable interest inquiry, the court concludes that the State satisfies the test for a cognizable, legally protectable interest.

10

### c. Impairment of Interest

In seeking to intervene, a potential intervenor must also demonstrate that disposition of the pending action may, as a practical matter, impair or impede the applicant's ability to protect its interests. *United States v. City of Los Angeles,* 288 F.3d 391, 401 (9th Cir. 2002). The State alleges procedural injuries resulting from defendants' promulgation of the 2005 Final Rule without providing sufficient time for public comment and without preparing an environmental impact statement in violation of NEPA and the APA.

None of the defendants, including AFPA, contests this prong of the analysis. The State argues that if this action against the federal defendants is unsucccessful, the people of the State of California will never be able to exercise their procedural rights under NEPA and the APA with regard to the 2005 Final Rule. If the action is successful, the State argues that it may participate in the fashioning of relief in order to protect fully the rights of the people of the State of California.

Based on the above, the court finds that the State has sufficiently demonstrated that its interests may be impaired or impeded by the disposition of this case.

### d. Inadequate Representation

An applicant for intervention must demonstrate that representation of its interests by existing parties to the litigation "may be" inadequate. *Forest Conservation Council*, 66 F.3d at 1498. The burden of showing inadequate representation is minimal, and doubts about adequacy of representation should be resolved in favor of the intervenor. *Id; see also Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003); 6 *Moore's Federal Practice* § 24.03[4][a][i](2004).

In *Forest Conservation Council,* environmental organizations brought suit for declaratory and injunctive relief against the Forest Service for failing to comply with the NFMA and the NEPA, and the State of Arizona and Apache County sought to intervene. The court found that the State and County could intervene as of right, and explained, "[i]n determining adequacy of representation, we consider whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; whether the present party is capable and

11

willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Id.* at 1498-99.

In this case, the State of California argues that none of the parties to this litigation adequately represent its interests. The State contends that neither the federal defenders nor AFPA represent their interests as they are opponents that promulgated and now defend, respectively, the 2005 Final Rule. The State also claims that Defenders are unable to represent their interests because they are answerable only to their membership, not the people of the State of California. Further, the State claims that Defenders do not share the same proprietary interests as the State.

AFPA argues that, on the contrary, Defenders adequately represent the State's interests.[5] AFPA contends that a presumption of adequacy arises from the fact that Defenders and the State have the "same ultimate objectives on precisely the same claims – a declaration that the 2005 Rule is unlawful, an injunction against applying or otherwise relying on that rule, and a declaration that the predecessor regulations issued in 1982 remain in effect." AFPA Opp'n at 6:23-28.

In *Sierra Club v. Robertson*, the Eighth Circuit faced a factual scenario almost identical to this situation. The district court found that the State could not intervene in an action filed by environmental groups to challenge forest management practices where the State sought essentially the same relief on the same grounds as the plaintiff. *Sierra Club v. Robertson*, 960 F.2d at 86. However, the Eighth Circuit disagreed, noting at least four reasons that the State's interests were sufficiently diverse from those of the plaintiff, including the fact that the State owned and leased property within and adjacent to the forest in question. *Id.* The court also pointed out that the plaintiff environmental groups represented only their membership while the State represented all of the State's citizens. *Id.*

---

[5] AFPA also argues that to the extent the Attorney General is asserting claims that are parens patriae, that the federal defendants adequately represent the people. *Massachusetts v. Mellon*, 262 U.S. 447, 485 (1923). This is true as to any parens patriae claims. However, as described above, the State asserts proprietary and procedural interests which are not parens patriae.

12

The court also may find that a proposed intervenor's interests are not adequately represented where the intervenor would bring a perspective none of the other parties to the litigation have. *See, e.g., Stevenson v. Rominger,* 905 F.Supp. 836, 843 (E.D. Wash. 1995). In *Stevenson,* the court observed that the perspective of a Commission responsible for representing citizens from the affected area would be different from that of the federal government. *Id.* at 843. The court explained that the Commission's "role as representative of the Washington and Oregon citizens located in this area provides it with a perspective not fully mirrored by the current parties to this action." *Id.*

Because the State of California represents broader interests than the environmental groups that filed the complaint in this case, and because the State has proprietary interests not represented by Defenders, the court concludes that the State is not adequately represented by the present parties to the litigation.

Accordingly, the court finds that the State has established a right to intervene.

### 2.     **Permissive Intervention**

Alternatively, the State requests that this court grant it permission to intervene under Rule 24(b).

If a proposed plaintiff's motion to intervene is timely and the applicant is able to demonstrate a common issue of law or fact, granting or denying permissive intervention is within the discretion of the court. In deciding whether to grant permissive intervention, a court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the other parties." *Garza,* 918 F.2d at 77. Furthermore, considerations of trial convenience, equity, and judicial economy dominate the district court's decision whether to grant permissive intervention. 6 *Moore's Federal Practice* § 24.10[1](2004).

As described above, the State's application to intervene satisfies the requirements for timeliness established in the Ninth Circuit. Moreover, the State has clearly demonstrated that it shares common issues of law and fact with the main action. Like Defenders, the State in this case challenges the promulgation of the 2005 Final Rule, the failure of the federal defendants to provide time for public response and comment, and the failure to complete an

13

EIS.

In addition, it does not appear that granting permissive intervention would cause undue delay or prejudice to any of the parties. Defenders and the federal defendants do not oppose permissive intervention. The only party that opposes permissive intervention, AFPA, suggests that the motion should not be granted because the Attorney General waited eight months after the First Supplemental Complaint, and because the delay will require AFPA and the federal defendants to "devote some of their previously limited pages to address any of the Attorney General's argument that differ from Plaintiffs' arguments." AFPA also suggests that intervention by the State would be redundant and impair the efficiency of the litigation.

Each of these arguments has been addressed in the sections above on intervention as of right. As described, the mere passage of time alone should not dictate whether a party may intervene in an action. In addition, the fact that AFPA and other defendants may have to devote time and resources to responding to the State's arguments is not a convincing argument for denying its request to intervene. Finally, the State does not share the same interests as Defenders in this action, and thus the State's intervention would not be redundant. Given the State's interest in this litigation, the lack of prejudice to other parties, and considerations of equity and judicial economy, this court grants the State's motion for permissive intervention as well.

## CONCLUSION

The State of California has met the requirements for intervention as of right. The State has demonstrated that its motion to intervene is timely, that the State has a legally protectable interest, that failure to allow intervention could impair or impede the State's interest, and that current parties to the case may not adequately represent the State's interests. Accordingly, the court GRANTS the motion to intervene as of right. Alternatively, the court finds that the State has demonstrated that it shares questions of law and fact with the main action, and therefore GRANTS permissive intervention.

This order fully adjudicates the matter listed at no. 55 of the clerk's docket for this case.

**IT IS SO ORDERED.**

Dated: December 1, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge