UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CITIZENS FOR BETTER FORESTRY, et al.,

    Plaintiffs,

  v.

U.S. DEPT. OF AGRICULTURE, et al.,

    Defendants,

    and

AMERICAN FOREST & PAPER ASSN., et al.,

    Defendants-Intervenors.
_____/

DEFENDERS OF WILDLIFE, et al.,

    Plaintiffs,

    and

PEOPLE OF THE STATE OF CALIFORNIA,

    Plaintiff-Intervenor,

  v.

MIKE JOHANNS, Secretary, United States Department of Agriculture, in his official capacity, et al.,

    Defendants,

    and

AMERICAN FOREST & PAPER ASSN., et al.,

    Defendants-Intervenors.
_____/

No. C 05-1144 PJH

No. C 04-4512 PJH

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

Plaintiffs' consolidated motion for attorneys' fees came on for hearing before this court on November 12, 2008. Plaintiffs Defenders of Wildlife, Sierra Club,[1] The Wilderness Society, and the Vermont Natural Resources Council (referred to collectively as "Defenders") appeared through their counsel, Trent Orr. Plaintiffs Citizens for Better Forestry, Environmental Protection Information Center, Center for Biological Diversity, the Ecology Center, Gifford Pinchot Task Force, Kettle Range Conservation Group, Idaho Sporting Congress, Friends of the Clearwater, Utah Environmental Congress, Cascadia Wildlands Project, Klamath Siskiyou Wildlands Center, Southern Appalachian Biodiversity Project, Headwaters, the Lands Council, and Oregon Natural Resources Council Fund (previously referred to collectively as "Citizens") appeared through their counsel, Peter Frost. Federal defendants, Mike Johanns, the Secretary of the United States Department of Agriculture, Dale Bosworth, the Chief of the United States Forest Service, and the United States Forest Service, an agency within USDA (referred to collectively as "USDA"), appeared through their counsel, Andrew Smith. Having reviewed the parties' papers, the record, and having carefully considered their arguments and the relevant legal authorities, the court hereby GRANTS IN PART and DENIES IN PART plaintiffs' motion for attorneys' fees.

**BACKGROUND**

Defenders filed their case, 04-4512 PJH, on October 26, 2004, asserting five claims for relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, the National Forest Management Act of 1976 ("NFMA"), 16 U.S.C. § 1600 et seq., and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4231 et seq., against USDA.

Defenders subsequently filed a supplemental complaint on February 17, 2005. Defendants American Forest & Paper Association and American Forest Resource Council (collectively "defendant-intervenors") intervened on May 23, 2005. On October 14, 2005, this court granted in part and denied in part defendants' motion for partial summary

---

[1] Plaintiff Sierra Club does not seek any fees in conjunction with this motion because all parties agree that based on its size and other factors, it is ineligible for fees.

2

judgment and/or for judgment on the pleadings as to three of the five claims in the Defenders case. The court denied summary judgment as to two of the claims, and granted it as to one. Thus, following the motion, four claims remained. Subsequently, on October 17, 2005, the State of California intervened in the Defenders case, and filed a complaint stating two claims (which overlapped with surviving claims in both the Defenders and Citizens cases).

Following this court's initial summary judgment order in the Defenders case, on March 21, 2005, Citizens filed their complaint in case number 05-1144 PJH. Citizens subsequently filed a supplemental complaint on November 7, 2005, alleging ten claims under NEPA, the APA, and the Endangered Species Act ("ESA") against USDA. Defendants American Forest & Paper Association and American Forest Resource Council intervened in the Citizens case as well. On April 21, 2006, the court granted defendants' motion for partial summary judgment and/or judgment on the pleadings, and dismissed six of the ten claims in the Citizens case. Accordingly, there were also four remaining claims in the Citizens case at the time the final summary judgment motions in these cases were heard.

Although the Citizens and Defenders cases were both assigned to this court, they were never formally related or consolidated. However, because of the overlapping nature of the eight surviving claims in the two cases, on May 10, 2006, the court ordered consolidated briefing on the final summary judgment motions as to the remaining claims. The court heard the final summary judgment motions on November 1, 2006, and on November 21, 2006, after the hearing, ordered supplemental consolidated briefing on the NEPA and ESA claims. On March 31, 2007, the court issued its summary judgment order granting in part and denying in part plaintiffs' and defendants' motions for summary judgment, and enjoining USDA from implementing and/or utilizing the 2005 Forest Rule at issue. USDA subsequently filed a motion to alter the judgment, which this court denied on July 3, 2007. In that order, the court also found that the injunction should be nationwide in scope.

The court subsequently ordered that Citizens and Defenders consolidate their motions for attorneys' fees, which they have done.

**DISCUSSION**

**A.    Plaintiffs' Motion**

Defenders and Citizens both claim that they are entitled to fees under the Equal Access to Justice Act ("EAJA") based on their NEPA and APA claims.  *See Wilderness Society v. Babbitt*, 5 F.3d 383, 385 (9th Cir. 1993) (parties that prevail under NEPA and the APA may seek attorney's fees, costs, and other expenses pursuant to the EAJA since NEPA and the APA do not themselves contain a citizen suit provision).  However, because Citizens also brought an ESA claim, it also contends that it is entitled to attorneys' fees under ESA, which, unlike NEPA and the APA, does contain a citizen suit provision.

    **1.    Legal Standards**

        **a.    EAJA**

The EAJA, 28 U.S.C § 2412, allows prevailing parties to recover attorneys' fees in cases brought by or against the United States unless the position of the United States in the litigation was substantially justified, or special circumstances make an award unjust.  28 U.S.C. § 2412(d)(1)(A).  Plaintiffs may be considered prevailing parties for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  *Farrar v. Hobby,* 506 U.S. 103, 111-12 (1992).  The prevailing party must also show that it is eligible to receive an award under the EAJA.  28 U.S.C. § 2412(d)(1)(B); *Love v. Reilly,* 924 F.2d 1492, 1494 (9th Cir. 1991).  A party is "eligible" if it is an organization with a net worth that does not exceed $7,000,000, and it

\\\\

\\\\

\\\\

does not have more than 500 employees at the time the action was filed. 28 U.S.C. § 2412(d)(2)(B).[2]

Once a party has established that it filed a timely application, is eligible for an award, and is the prevailing party, an award of fees is mandatory, unless the government's position was substantially justified or special circumstances exist that make an award of fees unjust. *See Love,* 924 F.2d at 1494-95. The government has the burden of proving substantial justification. *Id.* at 1495. To satisfy this burden, the government must demonstrate that its position had a reasonable basis both in law and fact. *U.S. v. Real Property,* 190 F.3d 977, 984 (9th Cir. 1999).

The EAJA allows for the award of attorneys' fees "based upon the prevailing market rates for the kind and quality of the services furnished," capped at $125 per hour, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(1)(D)(2)(A). In order to receive enhanced attorneys' fees, the following three factors must be proven: (1) "the attorney must possess distinctive knowledge and skills developed through a practice specialty;" (2) "those distinctive skills must be needed in the litigation;" and (3) "those skills must not be available elsewhere at the statutory rate." *Love*, 924 F.2d at 1496. Environmental litigation may constitute an identifiable practice specialty. *Natural Resources Defense Council v. Winter*, 543 F.3d 1152, 1159-60 (9th Cir. 2008). The burden of proving that appropriate counsel cannot be found at the statutory rate rests with the plaintiff. *Id.* at 1159-60 (citing *Real Property*, 190 F.3d at 985).

The Ninth Circuit has developed a two-part test to be applied where a plaintiff's success is limited.

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the

---

[2] Here, there is no dispute that all plaintiffs, except for Sierra Club, are eligible to receive an award under the EAJA.

5

> unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' If the plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only 'partial or limited success' was obtained, full compensation may be excessive. Such decisions are within the district court's discretion.

*Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986).

In *Hensley*, the Supreme Court held that, "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." 461 U.S. at 440; *Thorne,* 802 F.2d at 1141. Unrelated claims are "distinctly different" and based on different facts and legal theories, while related claims "involve a common core of facts or [are] based on related legal theories." *Hensley,* 461 U.S. at 434-35, 437 n. 12; *Thorne,* 802 F.2d at 1141; *Jeff D. v. Andrus,* 899 F.2d 753, 765 (9th Cir.1989).

The Ninth Circuit applies a "course of conduct" benchmark to determine whether claims are related or unrelated: "the test is whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." *Thorne,* 802 F.2d at 1141. Further, a plaintiff may be compensated for attorneys' fees incurred for services even on unsuccessful claims that contribute to the ultimate victory in the lawsuit. *Schwarz v. Secretary of Health and Human Services,* 73 F.3d 895, 903 (9th Cir. 1995); *Cabrales v. County of Los Angeles,* 935 F.2d 1050, 1052 (9th Cir. 1991).

The EAJA provides that the prevailing party can recover litigation expenses and costs in addition to attorneys' fees. 28 U.S.C. § 2412(a)(1); § 2412(d)(1)(A). "Expenses" include those that are normally billed to a client, such as telephone calls, postage, and attorney travel expenses. *International Woodworkers v. Donovan,* 792 F.2d 762, 767 (9th Cir. 1986).

**b.     ESA**

In any citizen suit brought under ESA, a district court "may award costs of litigation

6

(including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). Although the Supreme Court has not explicitly considered the contours of "appropriateness" in the context of ESA, it has considered an identical attorneys' fees provision of the Clean Air Act in *Ruckelshaus v. Sierra Club.* 463 U.S. 680 (1983). The Court held that a party need only prevail in part, i.e., achieve "some degree of success on the merits," before a district court may determine that an award of attorneys' fees is appropriate. *Id.* at 694. "[T]he class of parties eligible for fee awards from prevailing parties . . . [is] expand[ed] . . . to *partially prevailing* parties-parties achieving *some success,* even if not major success." *Id.* at 688.

Reasonable hourly rates under the attorney fee provision of ESA "must be calculated according to the prevailing market rates in the relevant legal community, with close attention paid to the fees charged by lawyers of reasonably comparable skill, experience and reputation." *Marbled Murrelet v. Pac. Lumber Co.*, 163 F.R.D. 308, 316 (N.D. Cal. 1995). If fees are appropriate, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," in other words, the "lodestar." *Hensley,* 461 U.S. at 433; *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir. 1987). While the lodestar is the presumptively reasonable fee award, it may be adjusted to accommodate degree of success. *Ferland v. Conrad Credit Corp.,* 244 F.3d 1145 (9th Cir. 2001). In calculating the lodestar, the court must determine both a reasonable number of hours and a reasonable hourly rate for each attorney. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986), *amended by* 808 F.2d 1373 (1987). The district court has tremendous discretion in fashioning a fee award. *See Corder v. Howard Johnson & Co.,* 53 F.3d 225, 229 (9th Cir. 1994); *Lads Trucking Co. v. Board of Trustees,* 777 F.2d 1371 (9th Cir. 1985) (the district court's determination should be reversed only for abuse of discretion); *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 452 (9th Cir. 1980) ("Abuse of discretion is found only when there is a definite conviction that the court made a clear error of judgment in its conclusion upon weighing relevant factors.").

### 2. Summary of Fees Requested

The court provides a chart summarizing the total fees and costs requested by Defenders and Citizens plaintiffs, the hours billed by individual attorneys, each of the attorneys' billable rates, and the total fees and expenses claimed.

| Attorney | Billable Rate | Total Hours Actually Spent | Hours Claimed | Total Fees |
|---|---|---|---|---|
| **Defenders** | | 1407 + 135 (attorneys' fees motion) | 1073 (1086.6 - 13.6 deducted in reply) + 108.6 (attorneys' fees motion) | $500,933.00[3] + $18,648.79.00 |
| Trent Orr | $500/hr | 972.7 + 135 (attorneys' fees motion) | 813.2 + 108.6 (billed at EAJA rate - $171.72) | $406,600.00 + $18,648.79 (attorneys' fees motion) |
| Timothy Preso | $375/hr | 220.5 | 147 | $55,125.00 |
| Michael Leahy | $275/hr | 112.8 | 112.8 | $31,020.00 |
| Emily Brown (research assoc.) | $115/hr | 71.2 | 71.2 | $8,188.00 |
| other expenses | | | | $1,902.92 |
| **Total fees + expenses** | | | | **$521,484.71** |
| **Citizens** | | n/a | 646.30 + 12.5 (reply attorneys' fees motion) | $187,213.55 + $2146.50 |
| Peter M.K. Frost | 2003- $300/hr  2004- $325/hr  2005-$350/hr  2006-$375/hr  2007-$400/hr  2008-$425/hr | n/a | 322 +12.5 (billed at EAJA rate - $171.72) | $105,403.15 |

---

[3]Defenders revised the amount of fees sought from their opening papers to their reply. Initially, Defenders sought $511,194.50 in fees for work on the merits (that did not include fees related to the attorneys' fees motion). *See* Orr Decl. I., ¶ 32. Following the government's opposition, Defenders deducted an additional $10,261.50 from their fee request, and in their reply, Defenders requested $500,933.00. *See* Reply at 15. The reductions represented 30.1 hours of a law clerk's time for researching an unsuccessful claim, *see* Orr Decl. II, ¶ 10, and 13.6 hours of Orr's time spent on the preliminary drafting of the portion of the complaint pertaining to an unsuccessful claim. *See id.* at ¶ 2, ll. 12-14.

8

| Marc Fink | 2003- $250/hr<br>2004-$275/hr<br>2005-$300/hr<br>2006-$325/hr<br>2007- $350/hr<br>2008 -$350/hr | n/a | 324.30 | $81,810.40 |
|---|---|---|---|---|
| Expenses | | | | $3,206.63 |
| **Total fees + expenses** | | | | **$192,566.68** |

### 3. Attorneys' Experience/Backgrounds

Defenders and Citizens filed more than thirty declarations in support of their motion for fees, many of which vouched for the quality of the attorneys' representation in this case, the attorneys' experience and billing rates, and for the fact that plaintiffs could not secure qualified attorneys to take the case at the EAJA statutory rate. The court has summarized below the attorneys' backgrounds and experience based on the submitted declarations.

#### a. Trent Orr (Defenders)

Orr graduated from Harvard Law School in 1977. Since then, he has worked almost exclusively for public interest environmental organizations, including among others, the Natural Resources Defense Council, the California Wilderness Coalition, and since 2000, Earthjustice. Earthjustice represented Defenders in the current litigation. It does not bill its clients for its attorneys' fees, but instead provides free legal representation so long as Earthjustice is satisfied that the litigation is in the public interest and meets certain other criteria. Orr has been compensated by Earthjustice for his work, both at an hourly rate as a contractor and on a salaried basis as a staff attorney. He does not receive any additional compensation for any court-awarded fees in the litigation; all fees benefit Earthjustice.

Several other attorneys vouch personally for Orr's skills and experience, in addition to his billing rate, including Cynthia Koehler, Robert Perlmutter, and James Wheaton.

#### b. Timothy Preso (Defenders)

Preso graduated from Georgetown Law School in 1994. He clerked for a year for a federal appellate judge, and then worked at a law firm for five years (not necessarily in

9

environmental law). Preso became a staff attorney with Earthjustice in 2000. He has worked on several cases involving challenges under NEPA, the APA, and NFMA.

Like Orr, he receives a net salary that is not affected by the recovery of attorneys' fees. The declarations that support Orr's fees similarly support Preso's fees.

### c. Michael Leahy (Defenders)

Unlike Orr and Preso, Leahy is a staff attorney for named party, Defenders of Wildlife. Leahy notes that given the other responsibilities of his position at Defenders, he was unable to act as lead counsel, but did play a role on the legal team.

Leahy graduated from Georgetown Law School in 2000. He was admitted to law school as a public interest law scholar. Prior to law school, Leahy worked in conservation at the National Audubon Society. After graduating from law school in 2000, he became a staff attorney for Defenders until August 2007. In September 2007, Leahy was promoted to director of the Rocky Mountain region for Defenders, a position that he currently holds. Leahy has served as counsel, including lead counsel, in a number of other environmental cases.

### d. Peter M.K. Frost (Citizens)

Frost graduated from the University of Oregon Law School in 1990. After graduating, he served as a law clerk at a state court of appeals for two years. From 1992-1999, he was a staff attorney for the National Wildlife Foundation, and during that time, also taught a clinical environmental law class at Lewis and Clark Law School. In 1999, Frost became an attorney at the Western Environmental Law Center in Eugene, Oregon. Western is a nonprofit public interest law firm. He also teaches an environmental law school class at the University of Oregon Law School. Frost has substantial experience in environmental cases before this court and before the Ninth Circuit. He has also published in the environmental law field.

Sharon Dugan and Luke Cole have submitted declarations personally vouching for Frost in terms of his skills and his fees in this case.

\\\\

### e. Marc Fink (Citizens)

Fink graduated from Lewis and Clark Law School in 1995, and obtained a certificate of completion in environmental and natural resources law. After graduation, Fink was a solo practitioner until 1999, representing environmental organizations in cases against federal agencies. Fink then spent six years as a staff attorney at the same public interest law firm as Frost, the Western Environmental Law Center in Eugene, Oregon. Fink then returned to practice as a solo practitioner for a couple years before joining the Center for Biological Diversity as a staff attorney. Fink has worked on numerous environmental cases in the Ninth Circuit.

### 4. Parties' Arguments Generally

At the outset, the court notes that there are several significant issues that USDA does not dispute. Those include: (1) Citizens is eligible for an ESA fee award; (2) Citizens and all but one of Defenders plaintiffs (Sierra Club) are eligible for EAJA fees; (3) USDA's position was not substantially justified, and no special circumstances exist such that a fee award is not appropriate under the EAJA; (4) plaintiffs' counsel are entitled to enhanced hourly rates under the EAJA, and are also entitled to the same hourly rates under the EAJA and ESA; (5) the hourly rates requested by Orr, Frost, and Fink are reasonable; and (6) plaintiffs are entitled to recover their costs and expenses.

Plaintiffs argue that their total hours were reasonable under both ESA and the EAJA. They assert that Defenders and Citizens attempted to divide tasks equitably, but acknowledge that there was some overlap, which they contend was necessary to ensure that their consolidated work reflected their respective clients' interests. Citizens note that Frost and Fink have omitted 34.30 hours spent opposing USDA's motion for judgment on the pleadings and/or for summary judgment, a motion that Citizens lost pursuant to the court's April 21, 2006 order. Frost and Fink also omitted time spent on media matters, on related matters not exclusive to this suit, and on clerical tasks.

As for Defenders attorneys, who have billed nearly 2 1/2 times as much as Citizens attorneys, plaintiffs note that Defenders filed its complaint in October 2004, several months

11

prior to the filing of Citizens' complaint in March 2005. Defenders assert that they were responsible for developing "core facts" in the case regarding USDA's alleged "paradigm" shift that was central not only to success on their APA and NEPA claims, but to the ESA claim brought in Citizens' companion case as well. Defenders argue that given the fact that they obtained "the vast preponderance of the relief sought," their hours were reasonable. They further contend that the number of hours is reasonable in light of "the numerous tasks necessary to bring this case to a successful conclusion, the vigorous opposition of the defendants, the complexity of the issues, and the national importance of the matters in dispute and of the result achieved."

Nevertheless, Defenders note that Orr, lead counsel for Defenders, has eliminated 424 hours of attorney time valued at $166,902.50, which represents time spent on activities like media contacts, work related solely to the intervention of timber interests, as well as time entries that Orr deemed duplicative or unnecessary.

Defenders attorneys also omitted 73.5 hours, or $27,562.50 in fees, spent by attorney Preso on the Interpretive Rule claim - on which plaintiffs did *not* prevail. Defenders also note that although Orr's role with respect to the losing claim was minimal, Orr himself has reduced his own time by 15%, which represents 145.9 hours and $72,950.00 in fees.

Turning to USDA's opposition, the court finds that like its motion to alter or amend the judgment, USDA has once again significantly mischaracterized the case. Its mischaracterizations include USDA's assertions that this case was "not particularly complex or lengthy," that it "turned on a single judicial opinion," that it could be resolved based on a small number of existing Ninth Circuit cases, and that plaintiffs did nothing more than reiterate the legal and factual arguments already addressed by the Ninth Circuit in *Citizens for Better Forestry v. USDA*, 341 F.3d 961 (9th Cir. 2003) (referred to hereinafter as "*Citizens I*"). The court finds that none of these characterizations are accurate, and is once again baffled by what are at best erroneous, and perhaps disingenuous, representations regarding the case.

Moreover, instead of addressing plaintiffs' requested fees in accordance with the applicable ESA and the EAJA legal standards, and with respect to the particular billing records in *this* case, USDA has, for the most part, simply analogized this case with *Citizens I*, arguing that the fees in this case should be commensurate with the fees sought in that case. USDA divides this case and the *Citizens I* case into tasks, and compares the time spent on particular tasks in this case with time spent on particular tasks in the *Citizens I* case. USDA's approach is to reduce plaintiffs' counsels' hours per task based on the amount of time spent on certain tasks by *Citizens I* attorneys. Accordingly, USDA's opposition is almost entirely based on the premise that this case is comparable to *Citizens I,* and that "reasonable" fees and hours per task can be determined based on those sought and awarded in *Citizens I.*

In addition to the task-related comparisons with the *Citizens I* case, USDA also objects to plaintiffs' fee request on the following bases:

(1) plaintiffs' failure to account for plaintiff-intervenor State of California's role in litigation, and to deduct that time from claimed hours;

(2) plaintiffs' failure to properly account for ineligible plaintiff Sierra Club's role in the litigation; and

(3) Defenders' counsel Preso's and Leahy's hourly rates.

**5.    Analysis**

    **1.    USDA's Comparison of this Case with *Citizens I***

As noted on the record at the November 12, 2008 hearing, the court is troubled by USDA's approach in opposing the instant motion. Instead of lodging legitimate objections to the billing records in *this* case, USDA chose to simply undertake a task-by-task comparison of this case and *Citizens I.* Not only is there no authority supporting USDA's approach, but the cases themselves are more dissimilar than they are similar. USDA is therefore comparing apples with oranges. Some of the most notable distinctions between this case and *Citizens I* are as follows:

(1)   This case, unlike *Citizens I*, involved a consolidation of two cases. Two summary judgment motions regarding standing, ripeness, and mootness were

13

|     |     |
| --- | --- |
|     | necessitated prior to the point at which the court consolidated briefing on the merits of the NEPA, APA, and ESA claims in this case; |
| (2) | In *Citizens I*, the district court dismissed the case on standing grounds. That was *not* the case here. Here, numerous claims survived the initial summary judgment phase, thus necessitating another summary judgment round that did not take place in *Citizens I;* |
| (3) | There are more parties in this case, and the Defenders plaintiffs and attorneys were not involved in *Citizens I;* |
| (4) | There were significantly more claims raised in this case, and the claims challenged a different rule, the 2005 Rule instead of the 2000 Rule; |
| (5) | The plaintiffs in this case achieved a much higher degree of success than the plaintiffs in *Citizens I* - they obtained a nationwide injunction on the merits of their claims; and |
| (6) | The court had to grapple with difficult issues that, contrary to USDA's characterization, had not been decided by the Ninth Circuit. |

This list is by no means exhaustive. Most, if not all, of the tasks that USDA has chosen to compare are themselves dissimilar.

The court therefore rejects USDA's suggestion that it need simply compare this case with *Citizens I*. Although the court rejects USDA's approach, it nevertheless finds that several reductions in plaintiffs' requested fees, some alluded to by USDA, are warranted as set forth below.

### 2. Reductions

Initially, the court notes that the correct comparison in this case is a comparison of Citizens' hours and fees with those of Defenders, and vice versa. There is no dispute that Defenders filed its complaint first and did indeed perform some of the necessary legwork prior to Citizens' involvement in the case. Moreover, even Citizens acknowledges that at times, Defenders, and specifically, Orr, performed the "lion's share" of certain tasks, namely the review of the administrative record.

However, the court remains troubled by the significant discrepancies in Defenders' and Citizens' fees. As noted, Defenders' fees are nearly two and one-half times those of Citizens, and exceed Citizens' requested fees by a staggering $328,918.03. The court finds that this discrepancy is not entirely justified by Defenders' early involvement or by its

surplus efforts. Instead, it suggests that Defenders simply has not exercised the same degree of billing judgment exercised by Citizens in this case.

For example, Defenders' lead counsel's hourly rate of $500 exceeds that of Citizens' lead counsel's by a range of $75-200, depending on the billing year. Although there is nothing in the record that suggests that $500 is *not* a legitimate billing rate for Orr, the court finds the same is not true for the number of hours expended by Orr and by Defenders on certain tasks, as set forth in more detail below.

### a. State of California's Role

USDA argues that Defenders and Citizens plaintiffs' counsels' hours spent on the final summary judgment briefs should be reduced because USDA assumes that plaintiff-intervenor, the State of California, participated in the summary judgment briefing. Plaintiffs note that the State of California did not spend much time on the case, but instead ceded primary responsibility for record review and drafting of the briefs to Defenders and Citizens. Raissa Lerner, a deputy attorney general for California filed a declaration in support of plaintiffs' reply, and notes that the State is not seeking any fees and that she is unaware of the number of hours the State contributed to the final summary judgment effort. She asserts that the State indeed ceded primary responsibility to Citizens and Defenders, and notes that the State's hours would be "far less than that of either of the primary plaintiff groups."

The State of California has not submitted a fee application; nor has USDA demonstrated that Defenders and/or Citizens duplicated work performed by the State. Accordingly, the court declines to reduce plaintiffs' fee request on this basis.

### b. Defenders Counsel Preso's and Leahy's Hourly Rates

USDA argues that Preso's hourly rate of $375, and Leahy's hourly rate of $275 are too high when compared with Citizens' attorneys' rates. USDA asserts that both Preso and Leahy possess only eight years of experience specializing in environmental law, and notes that Leahy has far less litigation experience. USDA further notes that Preso's rate is the same as that of Frost, who has sixteen years experience in environmental litigation. It also

15

notes that Fink, a Citizens attorney with eleven years environmental litigation experience, more than Preso, has a rate that is $50/hour less than Preso's.

In reply, Defenders argues that Leahy and Preso independently established the rates they seek. They contend that their supporting declarations support the rates, and that it is not necessary for the court to bring their rates in line with those of Citizens attorneys.

The court, however, finds Leahy's and Preso's hourly rates excessive and not reasonable, especially when compared to Frost's. *See Chalmers,* 796 F.2d at 1210; *see also Love,* 924 F.2d at 1496. The court thus finds that Leahy's hourly rate should be reduced from $275/hour to $225/hour, and Preso's hourly rate should be reduced from $375/hour to $250/hour.

The reduced hourly rates result in a total reduction of $24,015.00 to Defenders' fees, which represents an $18,375.00 reduction attributable to Preso, and a $5,640.00 reduction attributable to Leahy. Accordingly, after this reduction, Defenders' overall fees and costs are now $497,469.71.

### c. Sierra Club's Role

USDA argues that Defenders' billing records indicate active participation by the Sierra Club, and that Defenders' fees should be reduced on this basis. Defenders respond that Sierra Club did not provide staff counsel to work on the case, and that the case would have been brought absent the Sierra Club plaintiffs.

The court finds Defenders' overall award should be reduced by the number of hours that it billed for time related exclusively to communications with Sierra Club. The court has reviewed Defenders' billing records accordingly, and finds that Orr's fees should be reduced by 8 hours, or $4,000.00, and Preso's fees should be reduced by 0.5 hours, or $125.00, for a total reduction of $4,125.00.

Accordingly, after this reduction, Defenders' overall fees and costs are now $493,344.71.

\\\\

\\\\

### d. Drafting of Complaints

Defenders spent 220.6 hours on complaint-related tasks, while Citizens claimed 21.6 hours for the same tasks.

Both Defenders and Citizens filed a complaint and a supplemental complaint. Defenders' first complaint was 13 pages and contained only one claim, alleging a violation of the APA based on USDA's failure to provide opportunity for comment on the 2004 Interpretive Rule, the claim on which the court granted summary judgment in favor of USDA. Defenders' supplemental complaint was 34 pages long, and raised five claims, four of which were brought under the APA and involved the 2004 Interpretive Rule and the 2005 Rule, and one brought under NEPA and the APA. The amended complaint set forth a 25 page history and background of the 2005 Rule.

Citizens' supplemental complaint, filed after Defenders' complaint, alleged ten claims for relief, eight of which overlapped with the five claims brought by Defenders (Citizens broke its claims down more narrowly than Defenders.) Citizens also alleged two additional claims - one under NEPA and the APA, and the other under ESA – both of which were ultimately successful.

Regarding the 199 hour discrepancy, Defenders assert that their time was not spent simply on drafting the complaints, but that extensive legal research was required, in addition to detailed review of the 1982 Rule, 2000 Rule, 2002 Proposed Rule, and the 2005 Rule. Defenders note that they have already deleted 13.6 hours or $6,800 worth of time spent on the 2004 Interpretive Rule claim, which was unsuccessful. Defenders further note that they filed their supplemental complaint before Citizens filed their first complaint, and that Citizens had the benefit of Defenders' complaint, which set forth a highly detailed comparison of the four planning rules.

The court finds that it was reasonable for Defenders' time on this task to exceed that of Citizens, but not by nearly *ten* times the amount. The court therefore finds that Defenders is entitled to no more than 50 hours related to the research and drafting of the complaint and supplemental complaint, a reduction of 170.6 hours. Because neither party

17

has delineated how much time each attorney spent on this task, *see* Orr Decl. I at ¶ 24, the court has averaged Defenders attorneys' hourly rates, which results in an average rate of $325, and has multiplied that by 170.6 hours, for a total reduction of $55,445.00.

Accordingly, after this reduction, Defenders' overall fees and costs are now $437,899.71.

### e. Orr's Review of Administrative Record

Defenders spent a total of 193.3 hours reviewing the administrative record and the Forest Service Directives for the 2005 Rule. By comparison, Citizens spent 53.8 hours on this task, or one-fourth of the amount of time.

USDA specifically takes issue with Orr's review of the administrative record. It claims that as an experienced attorney, Orr should have recognized that the case did not turn on the record, and suggests that the record review should have been assigned to a paralegal as opposed to an attorney billing $500/hour.

Defenders note that Orr reviewed the entire record and summarized the results of that review *for all plaintiffs' counsel*, thus eliminating the need for other plaintiffs' counsel to conduct such an in-depth review.[4] They also note that at least 30 hours of Defenders' time was spent ensuring that USDA corrected numerous record defects and produced a fully-indexed record. At the hearing, Orr stated that given the organization of his law firm, it was not possible for another attorney or support staff to review the record.

The court recognizes that the administrative record in this case was more complicated and lengthier than USDA's characterization of it. Nevertheless, the court finds it unreasonable for an experienced environmental attorney with a $500/hour billing rate to spend nearly five *weeks* reviewing the record. Accordingly, the court finds that Defenders' fees related to this task should be reduced by 110.3 hours and $55,150.00, such that Defenders are entitled to 80 hours at $500/hour, Orr's billing rate.

---

[4] At the November 12, 2008 hearing, Citizens agreed that Orr performed the "lion's share" of reviewing the administrative record for all of the plaintiffs.

Accordingly, after this reduction, Defenders' overall fees and costs are now $382,749.71.

### f. Supplemental Final Summary Judgment Briefing

Following the November 1, 2006 hearing on the parties' final cross-motions for summary judgment, the court ordered supplemental briefing. This supplemental briefing was necessitated by ambiguities and deficiencies in both the plaintiffs' and defendant's motion papers. Accordingly, the court finds that both Defenders' and Citizens' fees should be reduced by the fees related to the supplemental briefing. Although plaintiffs did not delineate the number of hours each attorney spent on the supplemental briefing, the court has reviewed the billing records and finds that the following reductions are appropriate. Defenders' fees should be reduced by $27,363.25 based on time spent on the supplemental briefing. This represents $21,800.00 attributable to Orr; $2,937.50 attributable to Preso; and $2,625.75 attributable to Leahy. Citizens' fees should be reduced by $16,375.00. This represents $11,662.50 attributable to Frost, and $4,712.50 attributable to Fink.

Accordingly, after this reduction, Defenders' overall fees and costs are now $355,386.46, and Citizens' overall fees and costs are now $176,191.68.

### g. Case Intake, Case Management, and Client/Misc.

Defenders spent 183.4 hours on the above three categories, while Citizens spent 70.8 hours on the three tasks. The court finds that this discrepancy is unreasonable, and reduces Defenders' time in this category to equal that of Citizens. Accordingly, Defenders' time is reduced by 112.6 hours to 70.8 hours.

Because neither party has delineated how much time each attorney spent on this task, *see* Orr Decl. I at ¶ 24, the court has averaged Defenders attorneys' hourly rates, which results in an average rate of $325, and has multiplied that by 112.6 hours, for a total reduction in the amount of $36,595.00.

Accordingly, after this reduction, Defenders' overall fees and costs are now $318,791.46.

19

### h. Other Reductions

The court declines to make any additional reductions to plaintiffs' attorneys' fees, and overrules any remaining objections lodged by USDA.

### CONCLUSION

For the reasons set forth above, the court GRANTS IN PART and DENIES IN PART plaintiffs' motion for attorney's fees and costs. Taking into account the above reductions, the court concludes that Defenders are entitled to $318,791.46 in fees and costs, which represents a $202,693.25 reduction from the fees and costs Defenders requested, and Citizens are entitled to $176,191.68 in fees and costs, which represents a $16,375.00 reduction from the fees and costs Citizens requested.

**IT IS SO ORDERED.**

Dated: December 11, 2008

PHYLLIS J. HAMILTON
United States District Judge